UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
JOHN HOLBERT,

                 *Plaintiff*,

     -*against*-

BONNIE COHEN-GALLET, and the NEW YORK
STATE UNIFIED COURT SYSTEM OFFICE OF
COURT ADMINISTRATION,

             *Defendants.*
------------------------------------------------------X

**<u>MEMORANDUM & ORDER</u>**
**05-CV-1281 (NGG)**

**NOT FOR PUBLICATION**

GARAUFIS, United States District Judge.

      In this action, John Holbert ("Plaintiff") has filed a 42 U.S.C. § 1983 suit against Bonnie

Cohen-Gallet ("Cohen-Gallet"), a Referee in the Family Court of Richmond County, New York,

and the New York State Unified Court System Office of Court Administration ("OCA").  The

Plaintiff alleges that Cohen-Gallet and OCA (collectively the "Defendants") violated his rights

under the First, Fourth, Ninth, and Fourteenth Amendments of the United State Constitution and

under Article 1, Section 12 of the New York State Constitution.  Before the court is Defendants'

motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of

Civil Procedure.  For the reasons set forth below, Defendants' motion to dismiss is granted, and

the Plaintiff's claims are dismissed with prejudice.

**I.     Plaintiff's Failure to Comply with Local Civil Rule 7.1**

      As a preliminary matter, the court notes that Plaintiff, who *is* represented by counsel, has

filed only an "Affirmation in Opposition" (affirmed by his counsel) in response to Defendants'

motion to dismiss.  Annexed to the affirmation is a "Witness's Affirmation."  The Plaintiff has

submitted no legal memorandum in support of his position, and, moreover, the affirmation cites

to no legal authority.

> Local Civil Rule 7.1 provides the following:
>
> Except as otherwise permitted by the court, all motions and all oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon in support of or in opposition to the motion, and divided, under appropriate headings, into as many parts as there are points to be determined. Willful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default.

E.D.N.Y. Local Civ. R. 7.1.  "An affirmation alone will not satisfy the requirements of Rule 7.1." Microsoft Corp. v. K & E Computer Inc., No. 00 Civ. 7550(RLC), 2001 WL 332962, at *1 (S.D.N.Y. Apr. 4, 2001) (where "defendants only filed an affirmation in opposition to [plaintiff's] motion to dismiss, and they did not cite to any legal authority," the requirements of Rule 7.1 were not met); Wenzhou Wanli Food Co. v. Hop Chong Trading Co., 2000 WL 964944, at *3 (S.D.N.Y. July 11, 2000) ("Submitting an affidavit rather than a memorandum of law is insufficient under Local Rule 7.1."); East 65 Street Realty Corp. v. Rinzler, 2000 WL 303279, at *3 (S.D.N.Y. Mar. 22, 2000) (same).  "Failure to file a memorandum of law in opposition to the opposing party's motion is, by itself, a sufficient basis to grant the motion."  Kamara v. United States, 2005 WL 2298176, *1 (S.D.N.Y. Sep. 20, 2005).   Although it is within my discretion to grant the Defendants' motion based solely on Plaintiff's failure to comply with Local Rule 7.1, in the interest of thoroughness, I choose to exercise my discretion to address the motion on its merits.

## II.     Standard of Review

In reviewing a motion to dismiss for failure to state a claim brought pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all

reasonable inferences from those allegations in the light most favorable to the plaintiff. See

Albright v. Oliver, 510 U.S. 266, 268 (1994); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir.

1999). In deciding such a motion, the court may take into account documents referenced in the

complaint, as well as documents that are in the plaintiff's possession or that the plaintiff knew of

and relied on in filing the suit. See Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d

Cir. 1993). The complaint may be dismissed only if "it appears beyond doubt, even when the

complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." Hoover v. Ronwin, 466 U.S. 558, 587 (1984) (citing Conley

v. Gibson, 355 U.S. 41, 45-46 (1957)). In deciding such a motion, the "issue is not whether a

plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support

the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations omitted).

This standard is applied with "particular force" when the plaintiff alleges civil rights violations.

Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).

Similar to a motion for failure to state a claim, when a court reviews a motion for lack of

subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it accepts as true all material factual

allegations in the complaint. Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 968 F.2d

196, 198 (2d Cir. 1992) (internal citations omitted). "Dismissal is inappropriate unless it appears

beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief."

Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000). The plaintiff bears the burden of proving by

a preponderance of the evidence that subject matter jurisdiction exists, and "a district court may

properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it 'lacks the

statutory or constitutional power to adjudicate it.'" Aurecchione v. Schoolman Transp. System,

Inc., 426 F.3d 635, 638 (2d Cir. 2005) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).  In contrast to a 12(b)(6) motion for failure to state a claim, when deciding a 12(b)(1) motion for dismissal based on lack of subject matter jurisdiction, the court must refrain from drawing "argumentative inferences" in favor of the party asserting jurisdiction.  See Atlantic Mut., 968 F.2d at 198 (internal citations omitted).

Where, as here, a motion to dismiss is made pursuant to both Rules 12(b)(1) and 12(b)(6), the jurisdictional motion must be considered first because if I dismiss the complaint for lack of subject matter jurisdiction, "the accompanying defenses and objections become moot and do not need to be determined."  United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1156 (2d Cir. 1993) (internal quotation and citation omitted); see also Magee v. Nassau County Med. Ctr., 27 F.Supp.2d 154, 158 (E.D.N.Y. 1998) ("A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.").

## III.    Background

### A.    The Family Court Proceeding

The Plaintiff is employed as a police detective with the New York Police Department. (Am. Compl. ¶ 7).  In March of 2004, the Plaintiff initiated a proceeding in the Richmond County Family Court to "enforce his right of visitation with his minor child," which had been ordered by the Family Court in 1996.  (Id. ¶¶ 11, 12).  The Plaintiff learned that Family Court procedure did not allow petitions for enforcement of visitation orders, but instead required the Plaintiff to file for a modification of the previously imposed custody order.  (Id. ¶13).  On

January 27, 2005, after numerous adjournments, the Plaintiff's case was called before Referee

Cohen-Gallet[1]. (Id. ¶ 14). In custody modification proceedings, it is standard practice for the

court to order "psychological (forensic) examinations" and for the Referee to "determine[] by a

showing of the Movant's ability to pay whether the forensic evaluation will be at public expense

or will be charged to the Movant." (Id. ¶¶ 15, 16). At the January 27, 2005 hearing, Cohen-

Gallet sought to make a determination as to the Plaintiff's ability to pay for such a forensic

evaluation.

According to the Plaintiff's complaint, during the course of the hearing, Cohen-Gallet

"bared her teeth and raised her voice so as to put all parties on notice that she was fierce." (Am.

Compl. at ¶ 18).[2] The gravamen of Plaintiff's complaint, however, is that his civil rights were

violated when Cohen-Gallet searched his wallet. (See id. ¶ 28). During the hearing, the

following exchange took place:

| | |
|---|---|
| THE COURT: | Do you have a credit card? |
| MR. HOLBERT: | No, I do not. |
| THE COURT: | No? Do you have your driver's license with you? |
| MR. HOLBERT: | Yes, I do. |
| THE COURT: | Can I see it? Are you carrying your shield? |
| MR. HOLBERT: | No, I'm not, m'am. |

---

[1] Attached to the Plaintiff's Amended Complaint as Exhibit A is a full transcript of the January 27, 2005 hearing before Referee Cohen-Gallet (hereinafter "Tr.").

[2] In paragraphs 21 through 25 of the Amended Complaint, the Plaintiff cites to specific statements in the hearing transcript which evidence "Defendant's sarcastic approach with Plaintiff," asserting that "[o]ur citizens do not come to Family Court to hear trite commentary from its justices." (Am. Compl. ¶ 21).

THE COURT:    Okay. Would you mind showing me what other cards you have in

your wallet? It's okay, just set that down.

(Tr. at 40-41).  At this point in the hearing, Cohen-Gallet looked through the Plaintiff's wallet.

(Id. at 41).  Plaintiff asserts that in requesting that the Plaintiff show the court the credit cards in

his wallet and in reviewing the contents of the Plaintiff's wallet once he turned the wallet over,

Cohen-Gallet conducted an unlawful search and seizure in violation of the Fourth Amendment.

(See Am. Compl. ¶ 41).

**B.    Plaintiff's Claims**

The Plaintiff asserts several bases for Section 1983 relief for violations of his

constitutional rights.  He maintains that a violation of his Fourth Amendment rights occurred

when Cohen-Gallet conducted an illegal search of his wallet (see Am. Compl. ¶ 41); that a

violation of his First Amendment rights occurred when the Defendants "act[ed] in retaliation via

their snide comments and unlawful search and seizure against Plaintiff for the exercise of his

rights under the Constitution to seek redress of wrongs in court" (id. ¶ 47); and that a violation of

his Fourteenth Amendment rights occurred when Cohen-Gallet "scowled as if to be ferocious –

abusing her governmental position" (id.  ¶ 51) and by the fact that she "took no action to reunite

Plaintiff and his child." (Id. ¶¶  57, 62-3).   The Plaintiff also asserts that these acts constitute a

violation of New York State Constitution Art. I, Section 12.  (Id. ¶ 67-8).

The Plaintiff requests the following relief: (1) a judgment declaring that "Defendant's

actions in baring her teeth and ordering the presentation of Plaintiff's wallet were in violation of

Plaintiff's federal constitutional rights and contrary to New York State law;" (2) an order

enjoining Defendants [sic] "policies, practices and customs of mistreating Family Court litigants

by intimidation or by coercion;" (3) an order enjoining defendants [sic] "from conducting unreasonable searches and seizures of the persons of Family Court litigants;" (4) a judgment directing that the Plaintiff be reunited with his son; (5) a preliminary and permanent injunction enjoining the Defendants from "continuing to violate the Plaintiff's [constitutional] rights;" (6) compensatory damages in the amount of two million dollars ($2,000,000); (7) exemplary and punitive damages in the amount of six million dollars ($6,000,000); and (8) reasonable costs and attorney's fees.  (Am. Compl. at 16-18).

For purposes of clarity, I will categorize the Plaintiff's claims, which (despite Plaintiff's representation by counsel) are inartfully pled, in the following manner.  First, the Plaintiff brings suit for money damages against OCA, a state agency, and against Cohen-Gallet in her official capacity.  The Plaintiff also brings claims for personal liability against Cohen-Gallet.  (See Am. Compl. ¶¶ 44, 48, 59, 64, 69) (stating that Defendants "acted under color of state law and in their *individual and official* capacities . . .") (emphasis added)).  The Plaintiff also brings suit for declaratory and other injunctive relief against OCA and Cohen-Gallet arising from his Family Court proceeding before Cohen-Gallet.  The Plaintiff seeks this court's intervention with respect to the following: Cohen-Gallet's allegedly aggressive manner exhibited toward the Plaintiff during his family court proceeding; Cohen-Gallet's decision to assess the Plaintiff's ability to pay for a forensic evaluation; Cohen-Gallet's failure to modify the Plaintiff's visitation/custody rights towards his son; and Cohen-Gallet's search of the Plaintiff's wallet.  The Plaintiff seeks to have this court intervene in the Family Court's determination of whether to modify the custody order affecting the Plaintiff's visitation rights over his son by ordering the Plaintiff's reunification with

his son.[3]

## IV.    Discussion

The Defendants have moved to dismiss the Plaintiff's complaint on the grounds that (1) the Eleventh Amendment bars suit against OCA; (2) Cohen-Gallet is absolutely immune from suit; (3) the Plaintiff's claims are barred by the *Rooker-Feldman* doctrine; (4) the domestic relations exception to federal jurisdiction requires dismissal of the action;  and (5) the Plaintiff has suffered no Fourth Amendment violation by the alleged search of his wallet.  As will be discussed at length below, the Defendants' motion to dismiss is granted.

Before I turn to address the legal bases for my dismissal of the Plaintiff's complaint, I feel obligated to express my disappointment in the manner in which Cohen-Gallet, a judicial officer, treated the Plaintiff when he appeared before her in January of 2005.  Although Cohen-Gallet certainly had authority to inquire into the Plaintiff's financial status to determine the extent of his ability to pay for a forensic exam, questioning him about, and searching, the contents of his wallet was inappropriate.  To my knowledge, ascertaining whether a person has a driver's license or credit card in his wallet is not a measure of that person's financial capabilities.  I can see no legitimate reason for why Cohen-Gallet felt compelled to direct the Plaintiff to turn over his wallet.  Certainly, a financial questionnaire would have better served the court's purpose.  Moreover, I am particularly troubled by Cohen-Gallet's behavior given that it occurred in the Family Court setting, a forum which is always emotionally charged, especially in a situation such as this which concerned a father's custody and visitation rights with his child.

---

[3] At the pre-motion conference held before this court on June 7, 2005, counsel for the Plaintiff stated that the Plaintiff was no longer pursuing this family court proceeding. (Memorandum of Law in Support of Defendant's Motion to Dismiss ("Defs.' Mem.") at 3).

8

That being said, despite the fact that Cohen-Gallet overstepped her bounds and acted in what I consider an "injudicious" manner, the Plaintiff has no legal remedy under Section 1983. Regrettably, for the reasons set forth below, a federal lawsuit is not the correct forum to redress the Plaintiff's grievances, and his complaint against OCA and Cohen-Gallet is therefore dismissed.

## A. Eleventh Amendment Immunity for State Agencies

In deciding whether the Eleventh Amendment bars suit against OCA because OCA is a state agency, I must first address whether OCA is a "person" capable of being sued under Section 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). In Will, the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. at 71. The Will court, however, distinguished between Section 1983 claims for money damages and other retrospective relief, and those for prospective relief. See id. at n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (quoting Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985). Thus, under Will, the Plaintiff's Section 1983 claims seeking money damages against OCA, a state agency, must be dismissed because OCA is not a "person" within the meaning of Section 1983 liability. See Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities, 64 F.3d 810, 814-15 (2d Cir. 1995).

Having determined that OCA is not a "person" under Will, there is no need to reach the Eleventh Amendment immunity question. See Power v. Summers, 226 F.3d 815, 818 (7th Cir. 2000). However, in the interest of completeness, I note that the Plaintiff's claims for money

damages, costs and attorney's fees against OCA are also precluded by the Eleventh Amendment.

Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999) ("The portion of the

complaint that seeks to state a claim against the New York State Office of Court Administration

was properly dismissed.  An official arm of a state enjoys the same Eleventh Amendment

immunity from suit in federal court as is enjoyed by the state itself.  The State Office of Court

Administration is an arm of the state and therefore immune.") (internal citation omitted).

Therefore, the Plaintiff's claims seeking monetary relief against the OCA are hereby

dismissed for lack of subject matter jurisdiction.  Defendants' motion to dismiss on these claims

is granted.

### B.       Absolute Immunity for Judicial Officers

A judge who is sued under Section 1983 enjoys absolute immunity from individual

liability for all judicial acts.  "A judge will not be deprived of immunity because the action he

took was in error, was done maliciously, or was in excess of his authority; rather, he will be

subject to liability only when he has acted in the clear absence of all jurisdiction."   Stump v.

Sparkman, 435 U.S. 349, 356-357 (1978) (internal quotation and citation omitted).   The Second

Circuit follows the rule set forth in Stump:

> The cloak of immunity is not pierced by allegations of bad faith or malice,
> even though unfairness and injustice to a litigant may result on occasion.
> The principle of judicial immunity recognizes that a judge may err. But it
> is better for a judge when exercising the discretion inherent in his judicial
> power to risk some error and possible injury from such error than not to
> decide or act at all . . . . The Supreme Court has specifically applied the
> doctrine of judicial immunity to actions brought pursuant to 42 U.S.C. §
> 1983.

Tucker v. Outwater, 118 F.3d 930, 932 -933 (2d Cir. 1997) (internal quotations and citations

omitted).

Because the doctrine of judicial immunity rests on the need for uninhibited judicial decision-making, immunity extends to the exercise of judicial power by any judicial officer.  See e.g., Kovalesky v. Carpenter, No. 95 Civ. 3700, 1997 WL 630144, *2 (S.D.N.Y. Oct. 9, 1997). Cohen-Gallet, who serves as a Referee in the Richmond County Family Court System, is a judicial officer,[4] and is therefore entitled to immunity for judicial acts that are not in the clear absence of all jurisdiction.  Presiding over the Plaintiff's custody modification proceeding was without question a judicial act and Cohen-Gallet, as a Family Court Referee, had jurisdiction to do so.  Thus, Cohen-Gallet's actions in the courtroom on January 27, 2005 cannot be grounds for tort liability against her.

The Plaintiff urges that Cohen-Gallet's search of his wallet was a violation of the Fourth Amendment.  Even assuming arguendo that this search was improper, it was not in clear absence of all jurisdiction and is therefore protected by the immunity doctrine.  See Mireles v. Waco, 502 U.S. 9  (1991) (holding judge entitled to absolute immunity for ordering police officers to use excessive force to bring a litigant into the courtroom).  In Mireless, the Supreme Court explained:

> Of course, a judge's direction to police officers to carry out a judicial order
> with excessive force is not a function normally performed by a judge.  But
> if only the particular act in question were to be scrutinized, then any
> mistake of a judge in excess of his authority would become a "nonjudicial"
> act, because an improper or erroneous act cannot be said to be normally
> performed by a judge.  If judicial immunity means anything, it means that a
> judge will not be deprived of immunity because the action he took was in

---

[4] A website explaining the New York Family Courts states that "[s]ome cases such as custody and visitation are conducted by a referee who may hear and decide the case, and issue orders." See http://www.nycourts.gov/courts/nyc/family/whoswho.shtml.

error . . . or was in excess of his authority. Accordingly, as the language in Stump indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself." In other words, we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court.

Id. at 12-13 (internal quotations and citations omitted). Cohen-Gallet sought to review the contents of the Plaintiff's wallet in order to determine the Plaintiff's ability to pay for a forensic evaluation. By the Plaintiff's own admission, it is standard practice for a Family Court referee to make such a determination in a custody proceeding. (Am. Compl. ¶¶ 15, 16). Following the framework of Mireless, I look to "the particular act's relation to a general function normally performed by a judge," 502 U.S. at 13, in this case the function of determining in a custody proceeding the movant's ability to pay for a psychological evaluation. Cohen-Gallet's search, *even if* in excess of her authority, was nonetheless a judicial act and it was not performed in the clear absence of all jurisdiction. She is therefore entitled to absolute immunity for her conduct.

The immunity afforded Cohen-Gallet covers the Plaintiff's claims for monetary as well as injunctive relief. Although the Supreme Court held in 1984 that prospective injunctive relief *could* be granted against a judicial officer acting in his or her judicial capacity, see Pulliam v. Allen, 466 U.S. 522, 541-42, (1984), in 1996 Congress effectively reversed the Court's ruling in Pulliam with the enactment of the Federal Courts Improvement Act of 1996 ("FCIA"), Pub.L. No. 104-317, 110 Stat. 3847 (1996) (amending 42 U.S.C. § 1983). Section 309(c) of FCIA bars injunctive relief in any section 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." Thus, the doctrine of absolute judicial immunity now extends to cover suits

against judges where the Plaintiff seeks not only monetary relief, but prospective relief as well. See Brooks v. N.Y. State Supreme Court, Appellate Div. First Dept., No. 02-CV-4183, 2002 WL 31528632, at *2 (E.D.N.Y. Aug. 16, 2002) (Raggi, J.).

The Plaintiff's claims against Cohen-Gallet, accordingly, are dismissed with prejudice. Defendants' motion to dismiss for lack of subject matter jurisdiction is granted.

### C.    The *Rooker-Feldman* Doctrine

The Defendants also urge dismissal under the *Rooker-Feldman* doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). Under the *Rooker-Feldman* doctrine, a federal district court lacks subject matter jurisdiction over cases that effectively seek review of judgments of state courts and over cases where plaintiff's claims before the district court are "inextricably intertwined" with the state court's determinations. Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002). The Second Circuit has repeatedly noted that the Supreme Court has provided "little guidance" in determining when claims can be considered 'inextricably intertwined' with a state court judgment such that *Rooker-Feldman* will bar those claims in federal court. See id. at 55-56. In Moccio v. N.Y. State Office of Court Admin., 95 F.3d 195 (2d Cir. 1996), the Circuit Court provided the following definition: "'[I]nextricably intertwined' means, *at a minimum*, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding . . . subsequent litigation of the claim will be barred under the *Rooker-Feldman* doctrine if it would be barred under the principles of preclusion." 95 F.3d at 198 (emphasis added).

The instant case does not present a typical *Rooker-Feldman* scenario in the sense that the Plaintiff has apparently dropped the Family Court custody modification proceeding which

underlies this federal case and there has thus been no final order from the Family Court in that matter. Nonetheless, it is plain that a number, if not all, of the Plaintiff's claims effectively seek this court's intervention in the Plaintiff's Family Court custody proceeding concerning his son. The Plaintiff challenges the Family Court's alleged failure to reunite him with his son, Cohen-Gallet's behavior in conducting the custody modification proceeding, and Cohen-Gallet's actions in determining the Plaintiff's ability to pay for a psychiatric evaluation which is a component of a custody modification determination. The Plaintiff's claims are therefore "inextricably intertwined" with the state court matter and not within the subject matter of this court under *Rooker-Feldman.* See Phifer, 289 F.3d at 57; Chase v. Czajka, No. 04-Civ-8228, 2005 WL 1123397, at *4-6 (S.D.N.Y. May 12, 2005) (Peck, Mag. J.) (Report and Recommendation) (dismissing complaint under *Rooker-Feldman* and domestic relations exception to federal jurisdiction despite ongoing litigation in state family court).

Moreover, although I have already determined that Cohen-Gallet is absolutely immune from liability for her actions in searching the Plaintiff's wallet, I note that because the Plaintiff's instant claims are inextricably intertwined with his state court proceedings, the *Rooker-Feldman* doctrine "also prohibits this court from hearing plaintiff's claims that his constitutional rights were violated during the family court proceedings." Edem v. Spitzer, No. 05-CV-3504, 2005 WL 1971024, *1 (E.D.N.Y. Aug. 15, 2005). "A plaintiff may not overcome the [*Rooker-Feldman*] doctrine and seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (internal quotation omitted). The Plaintiff's assertion that his Fourth Amendment right to be free from illegal search and seizure was violated by the Defendants does

not create subject matter jurisdiction in this court.

Accordingly, the *Rooker-Feldman* doctrine provides an additional basis on which to dismiss the Plaintiff's claims.

### D. Domestic Relations Exception

Defendants also argue that subject matter jurisdiction with this court is lacking because of the domestic relations exception to federal jurisdiction. While there may be merit to this argument, <u>see</u> <u>e.g.</u>, <u>Rabinowitz</u>, 329 F. Supp. 2d at 376, it need not be decided at this time because I have found a basis to dismiss the Plaintiff's claims under the Eleventh Amendment, the doctrine of absolute judicial immunity, and the *Rooker-Feldman* doctrine.

### E. Illegal Search and Seizure in Violation of the Fourth Amendment

Finally, the Defendants argue that the Plaintiff's action alleging an illegal search of his wallet must be dismissed for failure to state a claim because, to the extent that a search occurred, it was reasonable and the Plaintiff consented to it by handing his wallet over to the court. (<u>See</u> Defs.' Mem. at 13-15). Again, because there are alternative grounds for dismissal of the Plaintiff's complaint, I will not reach the merits of this argument.

**V.       Conclusion**

For the reasons set forth above, the Defendants' Fed. R. Civ. P. 12(b) motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted is GRANTED. The Plaintiff's complaint is dismissed with prejudice.


SO ORDERED.

Date:   January 9, 2006                         _____/s/_____
        Brooklyn, New York                      NICHOLAS G. GARAUFIS
                                                United States District Judge